Byron C. Hanna v. Commissioner. Daisy May Hanna v. Commissioner.
Hanna v. Commissioner
Docket Nos. 739, 740.
United States Tax Court
1945 Tax Ct. Memo LEXIS 347; 4 T.C.M. (CCH) 37; T.C.M. (RIA) 45014; January 15, 1945
A. Calder Mackay, Esq., and Adam Y. Bennion, Esq., for the petitioners. Earl C. Crouter, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: The Commissioner determined deficiencies of $4,134.55 and $3,476.26 in the income taxes of Byron C. Hanna and Daisy May Hanna, respectively, for the calendar year 1940. The sole question presented for our determination is whether respondent erred in denying application of section 107 of the Internal Revenue Code. Findings of Fact Byron C. Hanna and Daisy May Hanna, the petitioners, were husband and wife, residents of California during 1940 and all *348 other times herein mentioned. They filed individual income tax returns for that year on the community property basis with the collector of internal revenue for the sixth collection district of California. During the taxable year and all other years herein mentioned, Byron C. Hanna and Harold C. Morton were law partners known by the firm name of Hanna and Morton. In July 1932 Etienne Lang, as agent for the members of a Lazard family of France, consulted Hanna and Morton with reference to claims against the Anglo-California National Bank of San Francisco, Herbert Fleishhacker, its president, and others. These claims arose out of certain acts of the Bank and Fleishhacker as agents of the Lazards in the sale some 17 years earlier of lands in California belonging to the Lazards. At that time Lang employed Hanna and Morton to render an opinion on the validity of the claims and to draft a specimen form of complaint. Lang paid Hanna and Morton $2,500 for these services. There was no obligation on the part of Lang or the Lazards to employ Hanna and Morton for further services and no obligation on the part of Hanna and Morton to accept such employment. In October 1932, after consulting with *349 other lawyers, Lang employed Hanna and Morton to proceed with the case. Lang and Morton agreed that $27,500 would be advanced to Hanna and Morton to cover costs and expenses, with the understanding that if any balance should remain at the conclusion of the employment,&it would belong to Hanna and Morton. It was understood that Hanna and Morton received these funds for such purposes only and the accounts of Hanna and Morton dealing with the funds were frequently inspected by Lang. The books of Hanna and Morton designated the fund as a "Trust Account." The $27,500 was paid over on October 15, 1932, and the receipt given for it read "Lazard Matter, On Account, Trust Acct." It was further agreed that Hanna and Morton would be responsible for any expenses beyond the $27,500. In addition to any balance remaining of the $27,500 their fee was to be 15 percent of the recovery. For some time $20,000 of the fund was left on deposit in the firm's name in two savings banks. Lang knew and approved of this. The funds were never kept in a separately designated trust account. Land knew of this and acquiesced in it. A total of $1,168.86 in interest accrued on the savings accounts. During the years *350 1934 to 1936 Hanna and Morton withdrew this interest for their own unrestricted use having been told by Lang that they could keep it. They were to return it if it ever became necessary to complete the payment of expenses, their obligation in any event being to meet all expenses over the $27,500. The interest so received was currently reported as income by Hanna and Morton. This interest was a fee for services when it was so withdrawn by Hanna and Morton. Lang agreed to the withdrawal of $2,000 by Hanna and Morton as fees at the time the $27,500 was first paid over in October 1932. Later in the same month an additional $1,500 was withdrawn as a fee with Lang's approval. A further fee withdrawal of $1,000 was made on May 1, 1933, with Lang's permission and again on October 31, 1936, Lang gave Morton his consent for the firm to withdraw $1,000. Each of these fees was paid subject to the understanding that Hanna and Morton were to make up any deficits for expenses beyond the original amount paid to them for that purpose. They included these fees as compensation in their income tax returns in the years received. Hanna and Morton successfully tried the case for the Lazards and on January 19, 1940, the *351 Bank paid $746,354.95 in satisfaction of the judgment. From this amount Hanna and Morton received on that day $114,018.19, consisting of the contingent fee in the amount of $111,588.84 and $2,429.35 reimbursement of costs expended from the $27,500 fund, At that time, exclusive of the reimbursement for costs, there was a balance of $7,769.55 of the original $27,500 which Hanna and Morton also received pursuant to the arrangement previously made. Thus, Hanna and Morton received fees of $1,168.86 and $5,500 prior to completion of the services in 1940 and $121,787.74 on completion of those services in 1940. Viewing the original payment of $2,500 as being for a separate and distinct employment, addition of these figures indicates that a total fee of $128,456.60 was rceived by Hanna and Morton on this case. Of this amount, $121,787.74; or 94.8 percent, was paid on the completion of the services. Opinion The sole issue is whether petitioner's are entitled to have their share of a fee for legal services received in 1940 taxed under the provisions of section 107 of the Internal Revenue Code. [1] In order for the section to apply "not less than 95 per centum" of the *352 compensation must be paid only on completion of the services. The Regulations provide that "Section 107 is applicable only where at least 95 percent of the total compensation for such services is paid on or after their completion." Treasury Regulations 103, Sec. 19.107-1. On the completion of their services *353 for the Lazards in 1940 Hanna and Morton received a final fee of $121,787.74. During the years 1932 through 1936 they received a total of $6,668.86 in fees on the same case. The fact that Hanna and Morton were under the contingent liability of meeting any expenses after the exhaustion of the $27,500 fund paid to them by Lang for expenses did not prevent the payments to them of $5,500 from the principal of the fund and $1,168.86 interest on the fund from being fees and income in the years in which received. Cf. North American Oil Consolidated v. Burnet, 286 U.S. 417; Blum v. Helvering, 74 Fed. (2d) 482, cert. denied 295 U.C. 732; Highland Milk Condensing Co. v. Phillip, 34 Fed. (2d) 777, cert. denied 280 U.S. 608. Since the $121,787.74 received on completion of the services is 94.8 percent of $128,456.60, the entire compensation, the petitioners fail to meet the explicit requirements of section 107. Decisions will be entered for the respondent. Footnotes
1. Section 107, Internal Revenue Code, added by section 220 of the Revenue Act of 1939: SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF FIVE YEARS OR MORE. In the case of compensation (a) received, for personal services rendered by an individual in his individual capacity, or as a member of a partnership, and covering a period of five calendar years or more from the beginning to the completion of such services, (b) paid (or not less than 95 per centum of which is paid) only on completion of such services, and (c) required to be included in gross income of such individual for any taxable year beginning after December 31, 1938, the tax attributable to such compensation shall not be greater than the aggregate of the taxes attributable to such compensation had it been received in equal portions in each of the years included in such period.↩